1853 ClassCo, Inc. v. Apple, Inc. That's not calling for a lifeline help phone, is it? Please, Mr. Quinlan, whenever you're ready. Your Honor, ClassCo believes that the patent trial on the Appeal Board made three reversible errors. But what I'd like to do first is address the failure to give credence to the patent owner's objective evidence of non-obviousness. And I think the easiest way to do that is to, because it's a little bit, I think it can be confusing as to how all of this stuff works together. So I brought along the product that was the subject of the industry praise, the customer testimonials, the licensing, and the commercial success. This is actually the product. It's a ClassCo 9500. Can I just double check? Is there any disagreement that what you have in your hands and next to you is in fact the product? Well, Apple has not objected up until this point. There's a picture of this in the Teleconnect article that's part of the record. And that's a 1653 of the record. And it's a 9500, says the model number. And it has this grill here. And behind this grill there's a speaker. But I just want to be clear. We're going to be talking about different speakers doing different things. This is not the speaker. This speaker has nothing to do with the invention. So actually the Teleconnect article has a really nice description of how this works. And taken along with the patent, the first thing you do when you get the box is you plug There's a jack here that says line. And you connect that jack to the demarcation point in your house. And that's the point where all the telephone lines come into the house. The demarcation point also has lines that go to all of your telephones, your extension telephones in the house. You connect that line to this jack called phone. Then generally the demarcation point is someplace like the basement or some central location if it's an apartment. So what you do is you use these buttons on the front. And you record. You can record one or more items of what the patent calls identity information. So record and you say it's Bob calling. And then you associate that recording with one or more telephone numbers, which the patent calls caller identification data. So then as the article says, there's a handset switch here. And you flip that handset switch to on. And then basically you don't even know this box is in the house. That's what happens when you get a call. And if it's a call from somebody that you've recorded the identity information for, this telephone rings. And this, just for the record, this telephone is shown in the appellant's brief. And it's also mentioned in the patent. It says that the unit can be used with any sort of standard telephone, including a speakerphone. That's in the second breast declaration at A1769. And it's also stated in the patent. And the phone you have does or does not have a speakerphone. This happens to be a speakerphone. But you can also use the invention with the portable phone that you can take out in the garden. You can also be used with just a telephone that you have a wire connected into a jack in the wall. So any standard extension telephone is what the invention is talking about. So if you go to the Teleconnect article, it says, quote, What page are you reading from now? 1653, I believe it is. It's hard to get all the paper up here. Big volumes. So what the Teleconnect article says is, quote, You can lift the handset without answering the call, close quote. The reason that's- What the board said about that is, where is that in the claim? I think that's one of the big issues before us. It is one of the issues, Your Honor. And it's in the claim where it says, well, can we hold it for just a second? Because I'm getting there. Okay, so now what happens is you lift the handset. You pick up the handset, but it doesn't answer the call. And that's what the article says. And the reason it doesn't answer the call is because this box is in the line between the demarcation point and the telephone. So then the article says, the unit, quote, Then announces over the inside line, meaning the speaker of the handset. So what you can do, as the article says, quote, You can answer, hello, Bob, or you can just hang up, close quote. Can we get to the patent now? We are. So in the patent, in the claim, there's an audio announcing circuit. And the audio announcing circuit is what is operable to cause this identity information to be announced over the caller voice signal. And that's the quotes I just quoted from the TelConnect article. That it said that it has, this box allows you to pick up the phone and hear the recording you made, the identity information, over the same speaker as the caller voice signal. I agree with you that claim two. Sorry? Claim two, for example, and claim one have the idea of having a single speaker through which both you hear the other person talking on the phone and you can hear this caller identification announcement. But why is it necessarily so in claim one or two that that would cover the idea that you're not going to learn who the identity of the person is until you pick up the handset, for example? Well, claim two comes in because you can, the article says, quote, you can record up to 20 identity announcements. So this clearly has a memory. No, but it's claim one. It's claim two. Maybe a version of the question is this. Maybe the claims cover both what you described and a pure speakerphone system. And as long as it covers a pure speakerphone system, then prior art about a speakerphone system would be a problem, even if the prior art didn't show the handset version. Is that right? Well, I guess I'm not quite sure I understand the question because it doesn't really cover just the standard speakerphone system because there's no audio announcing circuit in the standard speakerphone system that would give you the identity information over that speaker or even the speakerphone speaker. Okay. So the Teleconnect article praises these features, this particular feature by saying, quote, they really add utility. It frees you from being tied to the proximity of the box and lets the device serve multiple extensions and wireless phones. Wireless in that day and age in 1995 was what we call a portable phone now. So there's another article. Can I just tell me, do the claims require a multiplicity of devices connected to that or do the claims cover where one and only one? Just one, Your Honor. Okay. So part of what was praised is actually not claimed. The part that says multiple extensions, I agree with you. There's another article in a computer telephony magazine, which is at 1828. I think it also has a picture of this box. And it's also another example of a clear nexus to the claims. And it says, quote, if the 9500 is connected right at the phone line, sorry, if the 9500 is connected right as the phone line comes into your home and all of the phones behind it, as soon as you pick up the phone, it can play the name of the caller. What if you add the speakerphone embodiment? Because the claim does cover. So we agreed that the claim covers a speakerphone embodiment, correct? Say there's a speakerphone. Just give me a minute, please. I'm sorry. That's all right. Where the speakerphone might, for example, have both the person talking, the person on the other line talking, and also have the caller identification announcement coming out of a speakerphone, you know, instead of having to pick up a handset. That's right. Because the claim's broad enough to cover that. That's right. Only if you have this box, though. Well, let's say you have that box, but you're using a speakerphone. I mean, the claim is broad enough to cover that embodiment, right? Mm-hmm. Well, would the praise still apply that as soon as you pick up the phone, it'll play the name? Or is, I mean, that's what I'm trying to figure out. I'm trying to figure out the problem here is just the nexus question. And either through the law or through the facts themselves, I'm trying to understand how your claims are limited such that this praise would necessarily apply to the claim. Well, the praise talks about if you have this unit with its audio announcing circuit, which is what it's called in the claim, then what will happen is, in accordance with the claim, the speaker you're using for the telephone conversation, whether it's this speaker or that speaker, you will not only be able to use it for the telephone conversation, but the identity information you've recorded on this box will also come through that speaker. And then what that allows you to do is you don't need any sort of special equipment. It works with every telephone in the house. And that's what the praise is talking about. You are into your rebuttal time. And you reserved a relatively small amount of it. I knew that was going to go fast. I'll leave the rest of the briefs, Your Honor. I think they're very clear.  Reserving the rebuttal time, of course. Mr. Matsui. Thank you, Your Honor. May it please the Court. Brian Matsui for Apple. The Board's reexamination decision should be affirmed in its entirety. Substantial evidence supports the Board's decision on Claim 2. The record evidence fully supports the Board's finding that it would have been obvious to combine Fujioka and Gullick by adding the ubiquitous speakerphone capability to a prior ARC caller ID device that just had one speaker instead of two. Now, I'd like to address the secondary considerations evidence because my friend on the other side addressed that first. And with respect to that. I'm sorry. Before you get to that, I don't know if this question has an answer, but you spent a little bit of time in your brief pointing to the Marui? Yes, Your Honor. Is that the right pronunciation? Yes. Prior ARC. The Board didn't get to that, and I guess I'm a little bit puzzled. It seems like it might be a fuller combination than the one it relied on. Gullick. Yes, Your Honor. Marui discloses a speaker that plays expressly caller voice signals, caller ID signals, and ringtone signals. But the Board found it unnecessary to reach the rejection based upon Fujioka and view of Marui because Gullick disclosed everything that was necessary. Well, but presumably – I had the same question. Presumably the Board had a reason for thinking, well, let's go with the combination of Fujioka and Gullick as opposed to Marui. And I'm kind of curious if there's a problem with Marui that led the Board to choose the other option. No, Your Honor. We see no problem at all with Marui. I just decided that this is more challenging to do. Well, Your Honor, I don't – I disagree that it's more challenging because what Gullick teaches – Let me put it this way then. Marui might have been less challenging. Certainly. I think that because Gullick – Marui did disclose the caller ID signals and the caller voice signals. But I think that this is taking far too rigid a view of obviousness, which my friend on the other side has taken. Well, just to complete this, I mean I know you would have disagreed with anything that the other side said to try to distinguish Marui. But what did they say? Here's why Marui is not such a great piece of prior art. And maybe the Board thought, oh, that's more to think about than we have to think about with Gullick. I think that you'd have to ask the other side that question more because we focused on appeal more on just the Gullick reference. And I think Marui does provide – You brought up Marui in your brief. Yes, Your Honor. And we do think that Marui is relevant in the sense that this is the substantial evidence standard review, so any evidence that supports the Board's factual finding can be looked at. And Marui further supports Gullick's teachings that a person of ordinary skill in the art would understand that you could take a single speaker and it could play audio from different signals. And Marui just provides further support for that because our expert, Dr. Sprang, examined Gullick. He examined Marui, and he said that it would be very easy for a person of ordinary skill in the art to take a single audio transducer and make it so that it could play a variety of signals such as color ringtones, ringtone signals, color ID signals, and color voice signals. So do you want to get back on the highway of secondary considerations? Certainly, Your Honor. So with respect to the secondary considerations evidence, the fundamental flaw with all this evidence is that there's no nexus, and the Board found that, as a matter of fact, in substantial evidence supports it. If we take a look at JA 1653, which my friend Elias and I was talking about, the language in the middle column says, when the switch is on, the VACID switches the phone out of the loop so you can lift the handset without answering the call. And then it goes on to what was discussed. So the feature that's being talked about here is the ability to pick up the phone without connecting the call. Well, that's not claimed anywhere in Claim 14. Doesn't the idea that there's one speaker that provides both the caller identification and the person who's the caller speaking, doesn't that go toward that feature? I mean, you certainly couldn't have that feature without having a single speaker, right? I think that it's certainly a requirement, but that's not the feature that's getting the praise. Because if we take a look at Claim 5 of the patent, and that's at column 9 at JA 28, this is where the sort of picking up the phone feature is discussed. And it says, an isolation circuit operative to prevent the telephone system from completing the telephone call from the caller telephone to the called telephone while the audio announcement circuit is producing audio using the audio transducer at the called station. So what it's talking about there is that's the feature that's being praised, is that ability to pick up the telephone without answering the call. Do you agree that's in Dependent Claim 5? That is in Dependent Claim 5. So because Dependent Claim 5 depends from Claim 1, it's at least within the scope of Claim 1, right? Yes, but the feature itself is actually – the praise that the feature is being directed to is to that that's recited in Claim 5, not in Claim 1. Had your friend on the other side argued Claim 5 separately? Would that have made a difference? I don't think so, Your Honor, because the board found that really for the most part this is really more just a recitation of the elements of the features, and it's not really pure praise. And in addition, I don't think that you could take a look at this secondary consideration evidence and say that it outweighs the very strong obviousness case that's in this. Because the board didn't do that. I mean what the board did here was say there's no evidence – I mean no nexus, no nexus, no nexus. There was no weighing here, right? That's true that there was no express weighing, but I think that the board's decision, though, was based upon the absence of the nexus, and that finding is supported by substantial evidence. Because if we just look at the actual article on JA 1653, it's really directed at what's recited in Claim 5, and it's Claim 2 and Claim 14 which are the elements that are at issue in this case. What was the status of Claim 5? Was that one of the ones that was cancelled? No, it wasn't, Your Honor. And so what is the current status? I mean it is cancelled now, yes, Your Honor. It rises and falls, I believe, with – But it wasn't one of the ones that was cancelled earlier on in the process? No, Your Honor. But they have argued that all the claims rise and fall based upon Claims 2 and Claim 14. And so it would be far too late for them to raise any arguments now based upon Dependent Claim 5. And it's very clear that when you look at this evidence, it's all directed to unclaimed features or it's directed to features. Yes, Your Honor. I was just going to ask you about nexus generally. I mean our cases say that it has to be reasonably commensurate with the scope of the claim. What is your understanding of what that means? I think that it does need to be reasonably commensurate so that it doesn't need to be a perfect fit. But here it's not a perfect fit at all or even close to a fit at all because the praise itself is directed to those features that aren't recited in Claim 2 or in Claim 14. And that's a factual finding. The court's decision in Rambis indicated that whether or not there's a nexus is a question of fact. Substantial evidence supports that based upon the board's findings here. I mean it went through over six pages in the board's decision going through all the evidence that Class Go submitted and determined, as a matter of fact, that it was not persuasive. There was no nexus or it was something that was exclusively disclosed in the prior art, such as the ability to assign names to telephone numbers. That, of course, was something that was disclosed in Fujioka, which allowed – Can I ask you a question particularly on the Teleconnect magazine? The question might apply to a few of the others. What is the audience for this magazine? Is this what you call a technical magazine, a businessperson's magazine directed at who, or does the record not tell us? The record doesn't tell us. I believe it's a trade magazine, not – I mean I assume it's a trade magazine. The record is not entirely clear on that point. But again, to the extent there is any sort of praise here in this evidence, it's directed to an unclaimed feature or something that was exclusively disclosed in the prior art. It's within – it's an embodiment within Claim 1, right? But there's other embodiments to which the praise might not apply. Is that your argument? Yes, Your Honor. I mean I think that there still has to be a nexus between the praise itself and what's being claimed. And if the praise is directed to something that's not found in Claim 1 or Claim 2 that's really being directed to that, then you can't say there's a nexus there. And that's what the board found. It was entitled to find that as a matter of fact in this case because the real nifty feature was the ability to pick up the phone without connecting the call to hear who was calling. Or it was the ability to have the device work with a number of phones all throughout the house. But, of course, none of that is recited in the claims. None of that is sufficient to show a nexus between this evidence then and the claim features. Are you familiar with our decision in Cowell, Henry Cowell? In that case – Yes, Your Honor. We said that an applicant doesn't have to test every embodiment that falls within the scope of his or her claim. But you should be able to show that the praised benefit, or I think here it was unexpected results actually, would apply to all the different embodiments. So thinking of that, could you imagine a scenario of a device that falls within Claim 2 but that it wouldn't have the feature of picking up the handset and being able to hear who it is who is calling you?  Or if the praise was directed to the ability to announce audibly who was calling and that was what was being praised alone, then that seems like something that might fall within the scope of Claim 1 and there would be a nexus. Or if it hadn't been exclusively disclosed in the prior art with respect to Claim 2, the ability to store names associated with telephone numbers, that's additionally something that if the praise had been directed to that and hadn't been exclusively disclosed, that would be another example where there could be a nexus. But here the actual praise is – and I'm sorry to keep repeating myself – is directed to something else. It's directed to what's recited in Claim 5. And because of that, the board was entitled to find, as a matter of fact, that there was no nexus. And relying on that evidence, there is substantial evidence to support the board's determination there. Now, I'll just briefly touch upon the other issues with respect to Claim 2, which is just that Gullick, of course, does teach a person of ordinary skill in the art that you can take a single speakerphone and you can play audio from different signals. And CLASCO's argument really is directed to a very particular type of speakerphone that says that there would be technical impediments to being able to produce that, such as a speakerphone that had very, very loud audio so you could hear it 16 meters away or the ability to hear high-fidelity audio very, very close. That's not required anywhere in the claims as well. Can I ask you another question going back to nexus? Certainly. I'm sorry. Okay. On page, I think it's page 13 of the board's opinion, they say that they failed to demonstrate, the patent order failed to demonstrate that the claims recite that system as, quote, capable of audible announcement based on caller ID. Do you agree with that? It's about the sixth line down. Right. And I think that, yes, Dr. Lunau's, Mr. Lunau's not, his evidence is not sufficient to show that. But do you agree, yeah, but it says, does not Mr. Lunau states that the market included such and such, but does not demonstrate that the claims recite the system is capable of audible announcement based on caller ID. Do you agree that these claims don't talk about audible announcement based on caller ID? I believe that the board here is talking about the device itself and the particular devices that are sold, and it's not necessarily referring to the claims themselves, because the claims do have a device that can produce audio announcement based upon caller ID. I would acknowledge that, of course. And so the board was saying that there was not enough evidence here that the actual commercial success related to anything that was within the scope of the claims. I read this as saying that the claims don't cover a system capable of audible announcement based on caller ID. Therefore, the patent doesn't demonstrate a sufficient nexus. See, I would disagree with that, Your Honor, because it's very clear when you look at the board's opinion, you know, in full, that it understands that the claims do provide caller ID, caller ID information with an audible announcement. And that's why I think that it's really referring here to the device and the failure of proof on that respect, not that it's misreading the claims. Because I don't think that if you take a look at that one sentence, it's inconsistent with the rest of the opinion, which is very clear that the board understood what the claims recited. If there are no further questions. No, thank you. Mr. Quinlan, you have a couple of minutes left. I have two minutes worth, Your Honor. Okay. I think the idea that the article, that the praise in the Consumer and the Magazines of Record is directed to Bean Apple to pick up the phone, is just belied by a lot of the other objective evidence of record of industry praise. We have a Phillips News release that says that the voice announce feature indicates who is on the phone, no matter where the consumer is in the house, and eliminating the need for more than one caller ID. And in response to your question about what kind of publication is Teleconnect, in the Luna litigation declaration, which is of record, he points out Teleconnect Magazine gave awards at the Consumer Electronics Show. So it's clearly a publication for technical people related to telephone systems. That's all I have. Thank you very much. Thank you. The case is submitted.